**SO ORDERED.**

**SIGNED** this 11 day of April, 2013.



_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| JAMES E. COFIELD, JR. | 11-02034-8-SWH |
| DEBTOR | |
| | |
| JOSEPH N. CALLAWAY, Chapter 7 Trustee for James E. Cofield, Jr. | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 12-00270-8-SWH-AP |
| JAMES E. COFIELD, JR., *et. al.*, | |
| Defendants. | |

### ORDER REGARDING EMERGENCY MOTION TO QUASH

The matter before the court is the emergency motion filed by James R. Gilreath, Jr. to quash the trustee's notice of deposition, or in the alternative, for a protective order clarifying the scope of the deposition.  A hearing was held in Raleigh, North Carolina, on March 19, 2013.

### BACKGROUND

The debtor filed for relief under Chapter 11 of the Bankruptcy Code on March 17, 2011. Joseph N. Callaway (the "trustee") was appointed as Chapter 11 trustee on January 27, 2012. On

April 6, 2012, the case was converted to one under Chapter 7 of the Bankruptcy Code, and the trustee was re-appointed as Chapter 7 trustee.

On October 18, 2012, the trustee initiated an adversary proceeding against the debtor and Juan Cofield, in each of their capacities as co-trustees of the 101 East Bias Lane Trust (the "Trust") and as co-executors of the Elizabeth B. Cofield decedent estate (the "Decedent Estate"). The complaint also named as a defendant James R. Gilreath, Jr., in his capacity as trustee under a deed of trust recorded in Book 1838, page 452, Dare County Public Registry. The complaint asserts causes of action under 11 U.S.C. §§ 544, 547, 548, 550 and 551 to avoid and recover alleged preferential and fraudulent transfers made from the debtor to the Trust and the Decedent Estate.

On November 29, 2012, Mr. Gilreath responded to the complaint by, in pertinent part, filing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that he was not a necessary party to the underlying actions. A hearing on Mr. Gilreath's motion to dismiss was held on February 6, 2013, during which the trustee agreed to voluntarily dismiss, without prejudice, all claims as to Mr. Gilreath. Following the hearing, the trustee filed a notice of deposition of Mr. Gilreath on March 6, 2013, and shortly thereafter filed a stipulation dismissing all claims against him.

In response to the trustee's notice of deposition, Mr. Gilreath filed the instant emergency motion to quash or, alternatively, for an order setting forth the scope of the deposition. Mr. Gilreath, as a licensed attorney, has previously provided legal representation to both the debtor and Juan Cofield on various matters including those which are the subject of this adversary proceeding. As stated in the emergency motion and during the hearing, both the debtor and Juan Cofield have invoked the attorney-client privilege for all communications made between them and Mr. Gilreath

relating to Mr. Gilreath's legal represenation.[1]  As the basis for his emergency motion, Mr. Gilreath argues that all of the information sought by the trustee constitutes "confidential information" within the scope of Rule 1.6(a) of the Rules of Professional Conduct of the North Carolina State Bar. Further, Mr. Gilreath asserts that some of this information falls specifically within the attorney-client privilege that has been invoked by the debtor and Juan Cofield.

In response to the emergency motion, the trustee asserts that he intends to question Mr. Gilreath on matters relating to various transfers involving real estate located at 101 East Bias Lane, Duck, North Carolina 27949 (the "Property") occurring among the debtor, the Trust and the Decedent Estate.  Specifically, the trustee stated that he intends to question Mr. Gilreath on the following subjects:

1. Record title history of the Property located; [sic]

2. Any matters not of record that could possibly affect valid title to the Property or that are otherwise raised in the Answers filed by the Defendants;

3. The title opinion given to Mr. Cofield and later the update thereon (or new title opinion, as the case may be) given to Wells Fargo Bank, N.A., upon which Wells Fargo relied in entering into a substantial "reverse mortgage" promissory note and deed of trust secured by the Property (the "Wells Fargo Transaction");

4. The disposition of funds generated by the Wells Fargo Transaction;

5. All other matters, discussions and opinions related to or concerning the Property, transactions concerning the same, and other actions of the Debtor

---

[1]The debtor invoked his attorney-client privilege by notifying Mr. Gilreath via email on March 11, 2013. See  James R. Gilreath, Jr.'s Emergency Motion to Quash Plaintiff's Amended Notice of Deposition, or in the Alternative, For A Protective Order Clarifying the Scope of the Deposition, Exhibit B, March 14, 2013, Docket Entry No. 37. Juan Cofield made clear his intention to invoke the attorney-client privilege by filing a response in support of Mr. Gilreath's motion to quash.  Additionally, both the debtor and Juan Cofield have each filed a memorandum of law in support of the motion.

> related in any manner to the causes of action brought under Chapter 5 of Title 11, United States Code and related state law claims pending in this case, including but not limited to all activity of Mr. Cofield and the other defendants to this action that may result in liability by any party under the Chapter Five Actions.

See Response and Objection to James R. Gilreath, Jr.'s Emergency Motion to Quash Plaintiff's Amended Notice of Deposition, or in the Alternative, For A Protective Order Clarifying the Scope of the Deposition, March 18, 2013, Docket Entry No. 39.

The trustee argues that information relating to these matters will not violate Rule 1.6 of the Rules of Professional Conduct because it is either a matter of public record, was communicated to a third party, or falls within the scope of subsection (b)(4) to Rule 1.6. Id. The trustee also contends that, if the attorney-client privilege extends to any information he seeks from Mr. Gilreath relating to his representation of the debtor, he has the ability to waive the privilege as to the debtor relating to information concerning the validity of estate property. Id. (citing In re Tarkington, 2010 Bankr. LEXIS 1208, 2010 WL 1416813 (Bankr. E.D.N.C. Apr. 2, 2010)). This includes, as the trustee argues, the information sought in the deposition relating to the alleged preferential and fraudulent transfers.

## DISCUSSION

This adversary proceeding involves a federal cause of action, and therefore the federal common law of attorney-client privilege applies. Fed. R. Evid. 501; see also Virmani v. Novant Health, Inc., 259 F.3d 284, 287 n. 3 (4th Cir. 2001); Hawkins v. Stables, 148 F.3d 379, 382 (4th Cir. 1998); Taylor v. Wolbert (In re Wolbert), 2010 Bankr. LEXIS 6406, at *7, 2010 WL 8971772, at *3 (Feb. 17, 2010). The Fourth Circuit has adopted the "classic test" for determining the existence of attorney-client privilege:

4

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

Hawkins, 148 F.3d at 383 (citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982)).

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law . . . and rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Hawkins, 148 F.3d at 382 (quotations and citations omitted). However, it "impedes [the] full and free discovery of the truth" and is "not favored by federal courts." In re Grand Jury Proceedings, 727 F.2d 1352, 1355 (4th Cir. 1984) (quotations and citations omitted). The privilege is therefore "narrowly construed" and recognized "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth[.]" Hawkins, 148 F.3d at 382 (quotations and citations omitted). Further, and of great importance here, "[t]he burden is on the proponent of the attorney-client privilege to demonstrate its applicability." Hawkins, 148 F.3d at 381 (citing Jones, 696 F.2d at 1072).

There are various circumstances in which the privilege either does not apply or is considered to have been waived by the client. For example, where a client has no reasonable expectation of confidentiality, the attorney-client privilege is unavailable. Taylor v. Wolbert (In re Wolbert), 2010 Bankr. LEXIS 6406, at *10, 2010 WL 8971772, at *4 (Bankr. W.D.N.C. Feb. 17, 2010). As stated

by the Fourth Circuit, "[i]t is of the essence of the privilege that it is limited to those communications which the client either expressly made confidential or which he could reasonably assume under the circumstances would be understood by the attorney as so intended." In re Grand Jury Proceedings, 727 F.2d at 1355-56 (quotations and citations omitted). "In determining whether it was to be reasonably assume[d] that confidentiality was intended . . . the mere relationship of attorney-client does not warrant a presumption of confidentiality. Id. at 1356.

The Fourth Circuit has also explicitly recognized that the privilege does not apply "to information that the client intends his attorney to impart to others . . . or which the client intends shall be published or made known to others." Id. In such a situation, the loss of the privilege is not "confined to the particular words used to express the communication's content but extends to the substance of a communication, since the disclosure of any significant part of a communication waives the privilege and requires the attorney to disclose the details underlying the data which was to be published." Id. (quotations and citations omitted); see also Hawkins, 148 F.3d at 384 n.4 (discussing circumstances in which an implied"[s]ubject matter waiver" occurs).

To begin, neither Mr. Gilreath, the debtor nor Juan Cofield have satisfied their burden of demonstrating that the attorney-client privilege applies to any of the information sought by the trustee. Mr. Gilreath's motion to quash states that "essentially all of the information that Gilreath has regarding his former client is 'confidential information'" some of which "*could* be protected from disclosure by the attorney-client privilege." See James R. Gilreath, Jr.'s Emergency Motion to Quash Plaintiff's Amended Notice of Deposition, or in the Alternative, For A Protective Order Clarifying the Scope of the Deposition p. 2, March 14, 2013, Docket Entry No. 37 (emphasis added).

The debtor's and Juan Cofield's memoranda in support of the emergency motion focus on why the trustee should not be able to waive the privilege without specifically showing whether it even exists.

Such generalized assertions do not satisfy the elements necessary to establish the attorney-client privilege doctrine. For example, there has been no showing that the alleged "communication relates to a fact of which the attorney [Mr. Gilreath] was informed (a) by his client[s] [the debtor and Juan Cofield as co-trustees and co-executors of the Trust and the Decedent Estate] (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort . . . ." It would be error for the court to assume that the privilege applies without requiring its proponents to satisfy every element of the doctrine. See Hawkins, 148 F.3d at 383 (reversing district court and stating, "rather than requiring Stables [proponent of privilege] to prove the elements of the attorney-client privilege, the district court assumed that it applied, and placed the burden on Hawkins [opponent of privilege] to disprove its applicability").

Further, the objections to the notice of deposition resemble a type of "blanket objection" pursuant to which Mr. Gilreath, the debtor and Juan Cofield generally oppose the deposition in its entirety without any specific knowledge of what the trustee intends to ask.[2] In fact, as indicated by

---

[2] See In re Wolbert, 2010 Bankr. LEXIS 6406, at *18 n.6, 2010 WL 8971772, at *6 n.6 (stating that one reason the attorney-client privilege should not apply is that the proponents "attempted to assert the privilege generally, and without making the required . . . question by question assertions" and that "[i]t is well known that the privilege may not be asserted in this fashion"); see also Fed. R. Evid. 26(b)(5)(A) ("When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed–and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.").

Mr. Gilreath in his emergency motion, he likely has information that, although covered by the general rule of confidentiality, is not necessarily protected by the attorney-client privilege. While the trustee, in response to the emergency motion, has generally disclosed the various subject matters he intends to inquire into, neither Mr. Gilreath, the debtor nor Juan Cofield have provided any explanation as to why communications concerning those matters are protected by the privilege. Therefore, the deposition should be allowed to proceed during the course of which Mr. Gilreath, the debtor or Juan Cofield may assert the attorney-client privilege in response to specific questions asked by the trustee. The objecting parties must set out the basis for such privilege sufficient to satisfy their burden without divulging the privileged information.[3] Although a potentially tedious exercise, a question-by-question method allows for a more precise determination of whether the attorney-client privilege applies to the specific subject matter of each question asked by the trustee. This will better protect the debtor's and Juan Cofield's attorney-client privilege while ensuring that the trustee obtains information to which he is entitled.

Based upon the court's ruling that neither Mr. Gilreath, the debtor nor Juan Cofield have yet to establish that the attorney-client privilege applies, and because the parties (or the court if necessary) will determine the applicability of the privilege during the deposition, the court currently need not and will not decide whether the trustee has the ability to waive the privilege. See In re Tarkington, 2010 Bankr. LEXIS 1208, 2010 WL 1416813 (Bankr. E.D.N.C. Apr. 2, 2010). Although a court in this district has allowed a chapter 7 trustee to waive an individual debtor's

---

[3] Any disputes over whether the privilege applies that the parties are unable to resolve may be decided by the court pursuant to an appropriate procedure, such as, for example, having the proponents of the privilege "submit to [this court's] chambers . . . a written summary of the purportedly privileged testimony with an analysis of why the testimony is privileged[.]" See In re Grand Jury Subpoena, 533 F. Supp. 2d 602, 606 n.7 (E.D.N.C. 2007).

attorney-client privilege to the extent that the information relates to "the administration of estate property," such a determination must be made on a case-by-case basis. See Tarkington, 2010 Bankr. LEXIS 1208, at *6, 2010 WL 1416813, at *2. There are circumstances existing in the instant matter that distinguish it from the facts in Tarkington, and whether those differences require an opposite conclusion than that reached in Tarkington need only be determined after the parties, or the court, have concluded that the privilege in fact applies.

Finally, Mr. Gilreath has also objected to the deposition on grounds that it may cause him to violate the Rules of Professional Conduct of the North Carolina State Bar, specifically citing to Rule 1.6(a).  Mr. Gilreath has requested a protective order specifically determining whether he should provide deposition testimony concerning information that is "confidential," protected by the attorney-client privilege, or both.  See James R. Gilreath, Jr.'s Emergency Motion to Quash Plaintiff's Amended Notice of Deposition, or in the Alternative, For A Protective Order Clarifying the Scope of the Deposition p. 3, March 14, 2013, Docket Entry No. 37.

Rule 1.6(a) of the Rules of Professional Conduct provides that "[a] lawyer shall not reveal information acquired during the professional relationship with a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b)." N.C. Rules of Prof'l Conduct R. 1.6 (2013).  As provided in the comments to Rule 1.6, and as recognized by Mr. Gilreath in his motion, the general rule of confidentiality is broader in scope than the attorney-client privilege and "applies not only to matters communicated in confidence by the client but also to all information acquired during the representation, whatever its source."  Comment 3 to N.C. Rules of Prof'l Conduct R. 1.6 (2013).

9

As an exception to this rule of confidentiality, the Rules of Professional Conduct permit a lawyer to reveal information otherwise protected from disclosure "to the extent the lawyer reasonably believes necessary . . . to comply with the Rules of Professional Conduct, the law or court order." N.C. Rules of Prof'l Conduct R. 1.6(b)(1) (2013). Accordingly, a lawyer may disclose confidential information if ordered to do so by a court, or if required to do so by the law, without violating the Rules of Professional Conduct. See In re Grand Jury Subpoena, 533 F. Supp. 2d at 604-07; In re Williams, 2009 Bankr. LEXIS 1600, 2009 WL 1609389 (Bankr. E.D.N.C. June 8, 2009).

Courts often conclude that an attorney "may disclose non-privileged client confidences as necessary without fear of State Bar sanction" in order to comply with subpoenas. See, e.g., In re Grand Jury Subpoena, 533 F. Supp. 2d at 607 (requiring attorney to disclose non-privileged confidential communications in order to comply with a grand jury subpoena); Cf. In re Williams, 2009 Bankr. LEXIS 1600, 2009 WL 1609389 (requiring disclosure of confidential information in order to comply with a chapter 7 trustee's subpoena). In fact, as one court has stated, "[b]ecause a grand jury subpoena is enforceable by contempt of court, the lawyer not only may reveal confidential information under Rule 1.6(b) but necessarily *must* reveal the confidential information under threat of federal fine or imprisonment, or both." Grand Jury Subpoena, 533 F. Supp. 2d at 606 (quotations and citations omitted).[4] The reasoning supporting such decisions is based on public

---

[4]As mentioned previously, Rule 1.6(b)(1) permits an attorney to disclose confidential information in order to "comply with . . . the law or court order." N.C. Rules of Prof'l Conduct R. 1.6(b)(1). The court in In re Grand Jury Subpoena refrained from deciding whether a grand jury subpoena is a "court order," reasoning that compliance with such a subpoena is "the law of the United States," and thus falls under Rule 1.6(b)(1). The bankruptcy court in Williams found that a subpoena issued by a chapter 7 trustee was in fact a "court order" and required the attorney to produce confidential information pursuant to the exception under Rule 1.6(b)(1).

policy and that "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." Id. (stating also that "[s]hort of a federally recognized privilege, compliance with a grand jury subpoena is *the law* in the United States, thus trumping confidentiality obligations under Rule 1.6").

Following the reasoning of these courts, which have required disclosure of non-privileged confidential information to comply with subpoenas, the court hereby directs Mr. Gilreath to disclose all non-privileged confidential information that is requested by the trustee in his deposition. The very reasons that justify disclosure in response to a subpoena also support the instant court order directing Mr. Gilreath to disclose non-privileged confidential information, i.e. "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." In re Grand Jury Subpoena, 533 F. Supp. 2d at 606; see also Hawkins, 148 F.3d at 383 (recognizing the "normally predominant principle of utilizing all rational means for ascertaining truth") (quoting Trammel v. United States, 445 U.S. 40, 50, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980)).[5]  As added support for the instant order, requiring Mr. Gilreath to disclose such information enables the trustee to carry out his duties under the Bankruptcy Code in an effort to maximize the value of the estate and to protect the interests of the estate's creditors. Finally, limiting Mr. Gilreath's disclosure to *non-privileged* confidential information does not upset

---

[5] Had Mr. Gilreath been dismissed from the instant adversary proceeding prior to the trustee's notice of deposition, the trustee would have likely subpoenaed Mr. Gilreath to attend and testify at the deposition. See Fed. R. Civ. Pro. 30. Mr. Gilreath would have then filed a similar motion to quash the subpoena in which case the aforementioned decisions requiring disclosure of confidential information in response to a subpoena would have been directly applicable.

the longtime recognized interests underlying the attorney-client privilege. See, e.g., Hawkins, 148 F.3d at 382-83 (discussing the justification for, and the interests protected by, the privilege).[6]

This order is intended to satisfy the requirements of Rule 1.6(b)(1) of the Rules of Professional Conduct and to ensure that Mr. Gilreath does not violate his professional duties when disclosing potentially confidential information. As previously explained, neither Mr. Gilreath, the debtor nor Juan Cofield have satisfied the elements necessary to demonstrate that the information sought by the trustee is protected by the attorney-client privilege. The deposition therefore may proceed. Any party claiming the protections of the attorney-client privilege must specifically state on the record the basis for the privilege as to each question at issue. Any disputes over the applicability of the privilege, including whether the trustee has the ability to waive it, may then be presented to the court for a ruling. Finally, Mr. Gilreath shall disclose all non-privileged confidential information requested by the trustee during the deposition.

**SO ORDERED.**

**END OF DOCUMENT**

---

[6]The court need not address the trustee's argument that subsection (b)(4) of Rule 1.6 applies in the instant matter because the court is directing Mr. Gilreath to disclose confidential information that does not fall specifically within the attorney-client privilege. Further, because neither Mr. Gilreath, the debtor nor Juan Cofield satisfied their burden of showing that the federal attorney-client privilege applies, the court need not address whether subsection (b)(4) of Rule 1.6 permits an attorney to disclose information that is otherwise protected by the federal attorney-client privilege doctrine.